UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.:

| | |
|---|---|
| WILLIAM PINEIRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES CADY, individually, and | ) |
| ALFRED T. LAMBERTI, as SHERIFF | ) |
| of BROWARD COUNTY, Florida, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

1.     This is a civil action seeking money damages in excess of $15,000 dollars,

exclusive of costs, interest, and attorney's fees, against JAMES CADY, individually, and ALFRED

T. LAMBERTI, as SHERIFF of BROWARD COUNTY, Florida.

2.     This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.  The United States District

Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28

U.S.C. § 1331, and 28 U.S.C. § 1343.  Plaintiff further invokes the supplemental jurisdiction of the

United States District Court to hear pendant State tort claims arising under State law, pursuant to 28

U.S.C. § 1367(a).

3.     Plaintiff has served notice of claim pursuant to the provisions of Florida

Statute § 768.28.

## PARTIES

4.      Plaintiff WILLIAM PINEIRO is a resident of Broward County, State of Florida.

5.      At all times referred to herein, Defendant JAMES CADY [hereinafter Defendant CADY] was acting under color of law as a deputy sheriff for ALFRED T. LAMBERTI, as SHERIFF of BROWARD COUNTY, Florida, and in such capacity as an agent, servant, and employee of ALFRED T. LAMBERTI, as SHERIFF of BROWARD COUNTY, Florida.

6.      Defendant ALFRED T. LAMBERTI, as SHERIFF of BROWARD COUNTY, Florida, is the Sheriff of Broward County, Florida [hereinafter Defendant ALFRED T. LAMBERTI, as SHERIFF OF BROWARD COUNTY, Florida, or Defendant BROWARD SHERIFF'S OFFICE], as organized and existing under the Constitution and laws of the State of Florida.  In this cause, Defendant ALFRED T. LAMBERTI, as SHERIFF of BROWARD COUNTY, Florida, acted through its agents, employees, and servants, including Defendant CADY, and others.

7.      Plaintiff sues Defendant CADY in his individual capacity.

## FACTS

8.      On the evening of Saturday, December 5, 2009, Plaintiff attended an annual party hosted by his friend, Jorge Rodriguez, and his wife, Maria Rentel, at their residence located at 4608 S.W. 28th Avenue, Dania Beach, Broward County, Florida.  Many of the invites were friends of Jorge Rodriguez and co-workers at Fort Lauderdale-Hollywood International Airport, where they worked for American Airlines.

9.      At all times material hereto, Plaintiff was 47 years old, with no prior arrests.

10.      After midnight on December 6, 2009, Plaintiff was inside the living room of the Rodriguez residence when he was advised by Maria Rentel that a deputy was standing behind

his pickup truck, writing a ticket.

11.     Plaintiff walked to the front door of the Rodriguez residence, and in fact, observed Defendant CADY standing behind his pickup truck issuing a parking ticket.

12.     Plaintiff walked to the area of his pickup truck as Maria Rentel watched from the front door of her residence.

13.     Plaintiff approached his pickup truck and stated: "Excuse me, officer.  That is my truck."

14.     Defendant CADY responded by advising Plaintiff to "[s]hut the f- - - up."

15.     Plaintiff observed several other deputies on the street, and decided to return inside the Rodriguez residence, whereupon Plaintiff spoke with Maria Rentel.

16.     Maria Rentel agreed to move Plaintiff's truck, and advised Plaintiff that she would relocate the vehicle to a driveway on the side yard of the Rodriguez residence.

17.     Maria Rentel thereupon moved the truck, and returned Plaintiff's keys to Plaintiff inside the fenced backyard of the residence.

18.     Shortly thereafter, Plaintiff observed Jorge Rodriguez in the vicinity of several deputies.

19.     The deputies were ordering Jorge Rodriguez's guest to leave, and threatening to tow any vehicles which remained.

20.     Jorge Rodriguez explained to the deputies that all off his guests were inside the backyard and residence, and all the music had been turned off.

21.     A deputy responded that "everybody has to go," and reiterated that all vehicles would be towed and any remaining guests would be arrested.

22.     When Jorge Rodriguez protested, he was arrested and subjected to multiple

stuns with a Taser electroshock weapon. (See photographs 3337-3344, attached hereto and made a part hereof as composite Exhibit "A").

23.    When Jorge Rodriguez's wife, Maria Rentel, asked "what happened" to her husband, she was also arrested and placed on the back of a police car, in handcuffs.

24.    Several minutes later, Fire-Rescue arrived and examined Jorge Rodriguez.

25.    As Jorge Rodriguez was being treated by Fire-Rescue, Plaintiff was standing next to the cab of his pickup truck, on the side yard driveway of the Rodriguez residence.

26.    Plaintiff then observed Defendant CADY on the opposite side of the roadway, walking to his police car, whereupon Plaintiff stated: "Excuse me, officer. Can I have your name and badge number?"

27.    Defendant CADY failed to reply to Plaintiff's request, whereupon Plaintiff asked: "Can you tell me why you are arresting these people?"

28.    Defendant CADY responded: "What the f - - - , you want to be arrested, too," whereupon Defendant CADY ran across the street, tackled Plaintiff, and placed Plaintiff under arrest for the misdemeanor offense of obstruction of justice, in the absence of probable cause that Plaintiff committed any criminal offense, and in retaliation for Plaintiff's verbal inquiries directed towards Defendant CADY.

29.    Plaintiff was subsequently transported to jail.

30.    Following Plaintiff's arrest, Defendant CADY prepared a sworn "Probable Cause Affidavit" for submission to prosecuting authorities, containing false statements and material omissions.

31.    At all times material hereto, Defendant CADY knew that his "Probable Cause Affidavit" which Defendant CADY knew would be relied upon by prosecuting authorities for the

institution and continuation of criminal proceedings against Plaintiff.

32.     The "Probable Cause Affidavit" prepared by Defendant CADY for submission to prosecuting authorities contained false statements, insofar as the "Probable Cause Affidavit" falsely alleged that Plaintiff "did obstruct myself and other Deputy's [sic] by trying to get in between us and the crowd while we were trying to disperse a large crowd of people who were intoxicated and becoming confrontational," when in fact, as Defendant CADY knew, at the time Plaintiff asked for Defendant CADY's name and badge number, Jorge Rodriguez was being treated by Fire-Rescue, and the only persons on the street and in the vicinity of the deputies' vehicles and the Fire-Rescue truck were deputies, and Defendant CADY was merely walking towards his vehicle at the time of Plaintiff's inquiry. Further, as Defendant CADY knew, Plaintiff was arrested by Defendant CADY in retaliation for Plaintiff's protected speech, and at that time of Plaintiff's arrsest, there was no large crowd of intoxicated or confrontational persons, and Plaintiff never attempted to "get in between" Deputy CADY and other person, either verbally or physically.

33.     As a proximate cause of the false statements and material omissions contained in Defendant CADY's sworn "Probable Cause Affidavit," Plaintiff was charged with the misdemeanor offense of obstruction of justice.

34.     Notwithstanding the false statements and material omissions contained in Defendant CADY's sworn "Probable Cause Affidavit" and the false testimony of Defendant CADY on April 13, 2010, the Broward County State Attorney's Office filed a nolle prosequi as to the misdemeanor offense of obstruction of justice, and Plaintiff has never been convicted by any prosecuting authority of any criminal offense as a result of his arrest by Defendant CADY.

35.     At all times material hereto, the conduct of Defendant CADY occurred under color of state law.

## CAUSES OF ACTION

### COUNT I
### FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST DEFENDANT CADY, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant CADY, individually, in Count I, Plaintiff states:

36.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 35.

37.     Defendant CADY proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

38.     At all times material hereto, it was clearly established that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 107 S.Ct. 2502, 25010 (1987).

39.     At all times material hereto, it was clearly established that speech is protected under the First Amendment as long as it does not physically obstruct the officer and is not "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* at 2009-10.

40.     The conduct of Defendant CADY towards Plaintiff, as set forth herein, was in retaliation for Plaintiff's protected speech, objectively unreasonable, and in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from arrest in the absence of probable cause. *Bennett v. Hendrix*, 423 F.3d 1247, 1255-56 (11th Cir. 2005).

41.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with

great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

42.     As a further direct and proximate result of the conduct of Defendant CADY, Plaintiff suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life.  Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services, herein.

WHEREFORE, Plaintiff prays:

a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

b.     Judgment for exemplary damages;

c.     Cost of suit;

d.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e.     Trial by jury as to all issues so triable; and

f.     Such other relief as this Honorable Court may deem just and appropriate.

### COUNT II
### FIRST AMENDMENT FREE SPEECH RETALIATION CLAIM AGAINST
### DEFENDANT CADY, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant CADY, individually, in Count II, Plaintiff states:

43.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 35.

44.     Defendant CADY's arrest of Plaintiff was in retaliation for Plaintiff request for Defendant CADY's name and badge number, and in the absence of probable cause that Plaintiff committed any criminal offense. *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006).

45.     It was clearly established law at the time of Plaintiffs' arrest that "the First

Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 107 S.Ct. 2502, 2509 (1987).

46.     It was clearly established law at the time Plaintiff's arrest that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. at 2510.

47.     The arrest of Plaintiff by Defendant CADY occurred in the absence of probable cause that Plaintiff committed any criminal offense, and was likely deter a person of ordinary firmness from the exercise of First Amendment rights. The conduct of Defendant CADY towards Plaintiff constitutes unlawful retaliation in violation of Plaintiff's clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

48.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

49.     As a further direct and proximate result of the conduct of Defendant CADY, Plaintiff suffered mental anguish, loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

       a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

       b.     Judgment for exemplary damages;

       c.     Cost of suit;

       d.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

       e.     Trial by jury as to all issues so triable; and

f.      Such other relief as this Honorable Court may deem just and appropriate.

### COUNT III
### FALSE ARREST/FALSE IMPRISONMENT CLAIM
### AGAINST DEFENDANT BROWARD SHERIFF'S OFFICE

For his cause of action against Defendant BROWARD SHERIFF'S OFFICE in Count III, Plaintiff states:

50.     Plaintiff realleges and adopts, as if fully set forth in Count III the allegations of paragraphs 1 through 35.

51.     Defendant CADY proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

52.     The actions of Defendant CADY, in causing the arrest of Plaintiff in the absence of probable cause, were taken in the absence of lawful authority. The actions of Defendant CADY constitute false arrest/false imprisonment of Plaintiff under Florida law.

53.     The false arrest/false imprisonment of Plaintiff was committed by Defendant CADY in the course and scope of his employment as a deputy sheriff for Defendant BROWARD SHERIFF'S OFFICE.

54.     As a direct and proximate result of the acts described above, Plaintiff has suffered grievously and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation, including business reputation/goodwill.

55.     As a further direct and proximate result of the conduct of Defendant BROWARD SHERIFF'S OFFICE, Plaintiff suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

    a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

    b.    Cost of suit;

    c.    Trial by jury as to all issues so triable; and

    d.    Such other relief as this Honorable Court may deem just and appropriate.

**COUNT IV**
**FALSE ARREST/FALSE IMPRISONMENT CLAIM**
**AGAINST DEFENDANT CADY, INDIVIDUALLY**

For his cause of action against Defendant CADY, individually, in Count IV Plaintiff states:

56.    Plaintiff realleges and adopts, as if fully set forth in Count IV the allegations of paragraphs 1 through 35.

57.    Defendant CADY proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

58.    The actions of Defendant CADY, in causing the arrest of Plaintiff in the absence of probable cause, were taken in absence of lawful authority. The actions of Defendant CADY constitute false arrest/false imprisonment of Plaintiff under Florida law.

59.    Alternatively to the allegations set forth in Count III, if Plaintiff's arrest by Defendant CADY was committed outside the course and scope of Defendant CADY's employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of Defendant CADY occurred in his individual capacity.

60.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously and has been brought into public scandal, with great humiliation, mental

suffering and damaged reputation, including business reputation/goodwill.

61.     As a further direct and proximate result of the conduct of Defendant CADY, Plaintiff suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life.  Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

    a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

    b.    Judgment for exemplary damages;

    c.    Cost of suit;

    d.    Trial by jury as to all issues so triable; and

    e.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V
## MALICIOUS PROSECUTION AGAINST DEFENDANT CADY, INDIVIDUALLY

For his cause of action against Defendant CADY, individually, in Count V, Plaintiff states:

62.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 35.

63.     No reasonably cautious police officer in the position of Defendant CADY would have believed Plaintiff was guilty-in-fact of any criminal offense.

64.     Defendant CADY, individually, proximately caused criminal proceedings to be instituted or continued against Plaintiff with malice and in the absence of probable cause that Plaintiff committed any criminal offense by causing police reports to be submitted to prosecuting authorities containing materially false statements and material omissions.

65.    The conduct of Defendant CADY, individually, was reckless and without regard to whether the institution or continuation of criminal proceedings against Plaintiff were justified.

66.    At all times material hereto, Defendant CADY knew that his sworn "Probable Cause Affidavit" would be submitted to prosecuting authorities, and would be relied upon by prosecuting authorities for the institution and continuation of criminal proceedings against Plaintiff.

67.    The criminal proceedings instituted or continued by Defendant CADY reached a bona fide resolution in Plaintiff's favor.

68.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation, including business reputation/goodwill.

69.    As a further direct and proximate result of the conduct of Defendant CADY, individually, Plaintiff suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life.  Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.   As a result of the criminal proceedings commenced or continued by Defendant CADY, it was necessary for Plaintiff to retain the services of a criminal defense attorney to defend himself against the charges instituted or continued by Defendant CADY.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Judgment for exemplary damages;

c.    Cost of suit;

d.    Trial by jury as to all issues so triable; and

e.      Such other relief as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

70.     Plaintiff demands trial by jury on all issues so triable as of right.

**DATED** this _11th_ day of August, 2010.

By:__ *s/. Hugh L. Koerner* _____
      Hugh L. Koerner
      Florida Bar No.: 716952
      Email: hlkpa@fdn.com
      Hugh L. Koerner, P.A.
      Sheridan Executive Centre
      3475 Sheridan Street, Suite 208
      Hollywood, FL 33021
      Telephone:  (954) 522-1235
      Facsimile:   (954) 522-1176
      **Attorneys for Plaintiff William Pineiro**



EXHIBIT

A

